IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| FAITH KEENAN, | ) | CASE NO. 1:12 CV 439 |
| | ) | |
| Plaintiff, | ) | JUDGE JOHN R. ADAMS |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | WILLIAM H. BAUGHMAN, JR. |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | |
| | ) | **REPORT & RECOMMENDATION** |
| Defendant. | ) | |

## Introduction

This is an action for judicial review of the final decision of the Commissioner of Social Security denying the applications of the plaintiff, Faith Keenan, for disability insurance benefits and supplemental security income.

The Administrative Law Judge ("ALJ"), whose decision became the final decision of the Commissioner, found that Keenan had severe impairments consisting of degenerative disc disease, obesity, plantar fasciitis, bilateral metatarsalgia on balls of feet, adjustment disorder, personality disorder, depression, and anxiety.[1] The ALJ made the following finding regarding Keenan's residual functional capacity ("RFC"):

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a); consisting of lifting up to ten pounds, standing and walking up to two hours in an eight hour workday, sitting up to six hours in an eight hour workday, and the opportunity to change

---

[1] Transcript ("Tr.") at 11.

position as needed. The claimant is further limited from climbing ladders, ropes, and scaffolds; and can only occasionally climb ramps and stairs, stoop, kneel, crouch, and crawl. She is also restricted from work involving potential hazards such as moving machinery, unprotected heights, and uneven terrain. The claimant is limited to simple and routine work in a low stress environment, free of fast paced production requirements, involving simple work related decisions, few if any changes day to day, no interaction with the general public, brief and superficial contact with coworkers and supervisors, and no tandem tasks with coworker.[2]

The ALJ decided that this residual functional capacity precluded Keenan from performing her past relevant work.[3]

Based on an answer to a hypothetical question posed to the vocational expert ("VE") at the hearing, the ALJ determined that a significant number of jobs existed locally and nationally that Keenan could perform. The ALJ, therefore, found Keenan not under a disability.

Keenan asks for reversal of the Commissioner's decision on the ground that it does not have the support of substantial evidence in the administrative record. Specifically, Keenan argues that the ALJ posed a defective hypothetical to the VE and, therefore, the finding at step five of the sequential evaluation process, based on the VE's testimony, lacks the support of substantial evidence.

For the reasons explained below, I recommend that the ALJ's finding of no disability is supported by substantial evidence and should be affirmed.

---

[2] *Id.* at 14.

[3] *Id.* at 17.

# Analysis

## 1.    Standard of review

The Sixth Circuit in *Buxton v. Halter* reemphasized the standard of review applicable to decisions of the ALJs in disability cases:

> Congress has provided for federal court review of Social Security administrative decisions. 42 U.S.C. § 405(g). However, the scope of review is limited under 42 U.S.C. § 405(g): "The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive...." In other words, on review of the Commissioner's decision that claimant is not totally disabled within the meaning of the Social Security Act, the only issue reviewable by this court is whether the decision is supported by substantial evidence. Substantial evidence is " 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' "
>
> The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference.[4]

Viewed in the context of a jury trial, all that is necessary to affirm is that reasonable minds could reach different conclusions on the evidence.  If such is the case, the Commissioner survives "a directed verdict" and wins.[5]  The court may not disturb the Commissioner's findings, even if the preponderance of the evidence favors the claimant.[6]

---

[4] *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) (citations omitted).

[5] *LeMaster v. Sec'y of Health & Human Servs.*, 802 F.2d 839, 840 (6th Cir. 1986); *Tucker v. Comm'r of Soc. Sec.*, No. 3:06cv403, 2008 WL 399573, at *6 (S.D. Ohio Feb. 12, 2008).

[6] *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).

I will review the findings of the ALJ at issue here consistent with that deferential standard.

**2.      Substantial evidence supports the ALJ's step five finding.**

This case presents a single issue involving the ALJ's finding at step five that a significant number of jobs exists in the national and local economy that Keenan could do given her residual functional capacity. The ALJ based this finding on the testimony of the VE in response to hypotheticals posed by the ALJ.

Keenan makes two arguments. First, she submits that the hypothetical posed to the ALJ, the answer to which formed the basis for the ALJ's finding, did not include many of the limitations incorporated into the RFC finding at step four. Second, she posits the operative hypothetical, even if it contains broader limitations as argued by the Commissioner, is nevertheless defective because of an unresolved typographical error in the transcript.

The ALJ first posed a hypothetical that contained exertional limitations at the light level with additional postural, environmental, and mental limitations.[7] That hypothetical contains certain nonsensical words: "*Frequent for official interaction* only with co-workers and supervisors, but no tandem tasks with co-workers."[8] Whatever "[f]requent for official interaction" may mean, it is not a verbatim repetition of the "brief and superficial contact

_____

[7] Tr. at 58-59.

[8] *Id.* at 59 (emphasis added).

-4-

with co-workers and supervisors" limitation in the residual functional capacity finding.[9] In response, the VE identified unskilled jobs at the light level.[10]

The ALJ then interjected, "[l]et me add an option to sit or stand as needed to that...."[11] The VE responded that the same jobs would be available, but these jobs would typically be performed standing or with an option to sit at a stool.[12] Because the jobs were light and not sedentary, they would be performed typically standing, although there may be a stool there.[13]

The ALJ next asked, "[a]nd now the next hypothetical, ... are sedentary jobs that would allow someone to get up or down if they needed to?"[14] In response, the VE identified three jobs. The VE added, "if a stool was provided that if a person needs to sit for an extended period of time, then we are looking at sedentary work."[15]

---

[9] *Id.* at 14.

[10] *Id.* at 59.

[11] *Id.*

[12] *Id.* at 60.

[13] *Id.*

[14] *Id.*

[15] *Id.* at 62.

The ALJ adopted an RFC finding with sedentary exertional limitations.[16] In making the finding of the existence of a significant number of jobs existing at step five, the ALJ relied on the answer given by the VE to this last hypothetical.[17]

Keenan's first argument is that this third hypothetical is a "standalone" sedentary exertional limitation hypothetical, which incorporates a sit/stand option but not mental limitations. As such, Keenan argues, given that the RFC finding incorporates substantial mental limitations, the ALJ could not rely upon the answer to that hypothetical to support the step five finding. Giving the transcript a commonsense reading, I do not interpret it as containing a "standalone" sedentary with sit/stand option hypothetical. The commonsense reading here is that the ALJ posed a series of related hypotheticals that started out with light exertional limitations with other non-exertional limitations,[18] to which he added a sit/stand option,[19] and then changed that hypothetical again to substitute sedentary exertional for light.[20] So interpreted, the ALJ properly relied upon the answers to this version of the hypothetical as support for the step five finding.

Keenan's fallback position is that, assuming the operative hypothetical incorporates all limitations, it is nevertheless defective because it provided for "frequent official

---

[16] *Id.* at 14.

[17] *Compare*, Tr. at 18 with Tr. at 60-61.

[18] Tr. at 58-59.

[19] *Id.* at 59.

[20] *Id.*

interaction"[21] with co-workers and supervisors, whereas the RFC finding provided for only brief and superficial contact with co-workers and supervisors.[22] The phrase, "frequent for official interaction" makes absolutely no sense in the context of the record or the transcript. Giving the transcript a commonsense reading, this reference to "frequent for official interaction" is a typographical error.

Both Keenan and the Commissioner argue vigorously that this Court either cannot or can give the transcript the commonsense reading to address this problem. Although the hypothetical must be consistent with the RFC finding, can a nonsensical reading of the transcript undermine the step five finding?

As for a standard for giving a transcript of a hearing before an ALJ a commonsense reading to address a matter such as a typographical error, I adopt the test applicable to the substantial evidence inquiry – is the reading "such that a reasonable mind might accept it"[23] in the context of hearing in question. This test gives deference to the difficult task confronting the ALJs in making sensible and fair decisions in the face of overwhelming case loads assigned to them.

Several factors support the conclusion that "frequent for official interaction" was a typographical error not material to the VE's opinion. First, "frequent for official interaction" is a phrase that appears nowhere else in this case record. For example, the state agency

---

[21] *Id.*

[22] *Id.* at 14.

[23] *Buxton*, 246 F.3d at 772.

reviewing psychologist's evaluation,[24] to which the ALJ assigned some weight,[25] limited Keenan to occasional intermittent interaction with others.[26] It simply defies common sense that the ALJ would place the words "frequent for official interaction" in the hypothetical, while incorporating the other mental limitations opined by the reviewing psychologist.

Second, from the transcript, the focus of the inquiry to the VE was Keenan's need to alternate between sitting and standing and the effect of that limitation on the occupational base.[27]

Third, Keenan made no reference to the hypotheticals to the VE or to the use of the words "frequent for official interaction" in seeking review from the Appeals Council.[28] Although Keenan need not have raised this issue with the Appeals Council to preserve it for judicial review,[29] that she did not supports the conclusion that this typographical error was not material to the opinion expressed by the VE upon which the ALJ relied.

To serve as substantial evidence in support of a step five finding, a hypothetical to a VE need not track verbatim the RFC finding.[30] And as this Court has stated in numerous

---

[24] Tr. at 454-56.

[25] *Id.* at 17.

[26] *Id.* at 456.

[27] *Id.* at 59-61.

[28] *Id.* at 144-48.

[29] *Sims v. Apfel*, 530 U.S. 103, 112 (2000).

[30] *E.g.*, *Overbay v. Astrue*, No. 2:09 CV 240, 2011 WL 607389, at *3 (E.D. Tenn. Feb. 15, 2011).

opinions, a case need not be remanded in a quest for a perfect opinion unless there is reason to believe that a remand might produce a different result.[31]

Here substantial evidence supports a commonsense reading of the transcript such that confusion caused by the phrase "frequent for official interaction," if any, did not materially affect the opinion of the VE or the ALJ's reliance thereon.

## Conclusion

Substantial evidence supports the finding of the Commissioner that Keenan had no disability. Accordingly, I recommend that the decision of the Commissioner denying Keenan disability insurance benefits and supplemental security income be affirmed.

Dated: November 19, 2012                         s/ William H. Baughman, Jr.
                                                 United States Magistrate Judge

## Objections

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days of receipt of this notice. Failure to file objections within the specified time waives the right to appeal the District Court's order.[32]

---

[31] *E.g.*, *Coulter v. Astrue*, No. 5:12-CV-281, 2012 WL 5463858, at *11 (N.D. Ohio Nov. 8, 2012); *Dixon v. Comm'r of Soc. Sec.*, No. 3:11 CV 482, 2012 WL 2826970, at *12 (N.D. Ohio July 10, 2012); *Goble v. Comm'r of Soc. Sec.*, 1:10 CV 1661, 2012 WL 832356, at *6 (N.D. Ohio Mar. 9, 2012).

[32] *See*, *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also*, *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).